UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY B. ADELSON,

                     Plaintiff,             Civil Action No. 19-13569
                                        Honorable Terrence G. Berg
   v.                           Magistrate Judge David R. Grand

OCWEN LOAN SERVICING, LLC, *et al.*,

                     Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 10)

## and

## ORDER DENYING PLAINTIFF'S MOTIONS TO STRIKE AND TO "CORRECT DOCKET" (ECF Nos. 32, 37)

On December 11, 2019, Defendants PHH Mortgage Corporation ("PHH"), successor by merger to Ocwen Loan Servicing, LLC ("Ocwen"), and HSBC Bank USA N.A., as Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp. Home Equity Loan Trust 2007-HE1 Asset Backed Pass-Through Certificates (the "Trustee") (collectively "Defendants"), filed a Motion to Dismiss Plaintiff Wendy Adelson's ("Adelson") complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 10).  On February 21, 2020, Adelson filed a response to Defendants' motion. (ECF Nos. 19, 20).  On March 6, 2020, Defendants filed a reply brief in support of their motion to dismiss.  (ECF No. 24).  Oral argument was held on

Defendants' motion on May 18, 2020, and the matter is now ripe for ruling.[1]

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 10)** be **GRANTED**.

## II.   REPORT

### A.   Factual Background

#### 1.   The Loan

On or about September 26, 2006, Adelson accepted a $178,500 loan (the "Loan") from Sebring Capital Partners ("Sebring"), secured by a mortgage (the "Mortgage") on real property located at 3630 Waldon Road in Lake Orion, Michigan (the "Property").  (ECF No. 1-1, PageID.19).  Adelson granted the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Sebring and its successors and assigns.  (*Id.*, PageID.71).

Ocwen[2] became the servicer of the Loan in December 2006.  (ECF No. 1-1, PageID.20).  On December 19, 2006, Ocwen mailed Adelson a "Notice of Assignment, Sale, or Transfer of Servicing Rights."  (ECF No. 1-1, PageID.92).  The Notice advised Adelson that the servicing of the Loan – "that is the right to collect payments from you" – was transferred to Ocwen, and it noted that this transfer "does not affect any term or

---

[1] An Order of Reference was entered on December 30, 2019, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 14).

[2] Ocwen, a named defendant and the Loan's prior servicer, merged into PHH Mortgage Corporation, the Loan's current servicer, on June 1, 2019.

condition of the mortgage instruments, other than terms directly related to the servicing of your loan." (*Id.*). The Notice also advised Adelson that "[e]ffective 12/15/2006 please direct your monthly mortgage payments to your new Servicer, Ocwen." (*Id.*). On June 5, 2007, MERS assigned the Mortgage (the "Assignment") to the Trustee. (*Id.*, PageID.150).

### 2.    *Adelson's Default and the 2007 Lawsuit*

Adelson stopped making payments to Ocwen in early 2007. (*Id.*, PageID.20). Following Adelson's default, the Loan was referred to foreclosure. (*Id.*, PageID.20, 106). On July 27, 2007, Adelson challenged Ocwen's servicing of the Loan and the initiation of foreclosure proceedings by filing a complaint against Ocwen and the Trustee in the Oakland County Circuit Court. Ocwen and the Trustee removed Adelson's complaint to this Court, where it was assigned Case No. 07-13142.

### 3.    *The Multi-District Litigation and Settlement*

On December 14, 2007, the 2007 case was transferred to the U.S. District Court for the Northern District of Illinois, Case No. 07-07208 ("NDIL"), and consolidated for pretrial purposes with multi-district litigation pending in that court (Case No. 04-02714 (the "MDL")). In December 2010, the parties to the MDL reached a class settlement (the "MDL Settlement"). (ECF No. 1-1, PageID.155-178). Pursuant to the MDL Settlement, certain class members, including Adelson, would receive a late fee waiver, up to $1,000, in exchange for a full release. (*Id.*). The release exempted "statutory or common law rights against foreclosure, whether asserted in the form of a claim or defense." (*Id.*). On July 1, 2011, the Northern District of Illinois entered a Final Approval Order and Judgment with respect to the MDL Settlement (the "MDL Final Judgment"). (MDL, ECF No. 476).

More than three years later, Adelson filed a Rule 60(b) motion for relief from the MDL Final Judgment in the Northern District of Illinois, which was denied on October 27, 2014. (NDIL, ECF No. 32). Adelson appealed, and the Court of Appeals for the Seventh Circuit dismissed the appeal for lack of jurisdiction, holding that the MDL Settlement did not fully resolve Adelson's claims and that her case "remains pending." (NDIL, ECF No. 68). The Seventh Circuit found, however, that, "[a]s to Ocwen, Adelson appears to have abandoned a significant portion of her claims by not timely opting out of the settlement." (*Id.*, PageID.1089). The Northern District of Illinois then transferred the case back to this Court.

### 4. *The First and Second Amended Complaints*

On February 23, 2016, Adelson filed a First Amended Complaint, which contained 21 counts and more than 330 paragraphs. (Case No. 07-13142, ECF No. 25). This Court granted Defendants' Motion to Strike and for a More Definite Statement, finding that:

> [Adelson] has already had two opportunities to state her claims, but has failed to do so in any clear and concise manner, and has added defendants nine years after this litigation began. Moreover, [Adelson] has elected to proceed in pro per despite the Court's repeated admonitions that she should seek the advice and assistance of counsel.

(Case No. 07-13142, ECF No. 51, PageID.1150). Adelson subsequently filed a Corrected Second Amended Complaint ("SAC"), which was 65 pages long, included 345 numbered paragraphs, and contained 19 counts. (Case No. 07-13142, ECF No. 55). Adelson explained that the "gravamen" of her SAC was that Defendants:

> [h]ave sought to conduct a foreclosure sale of the Subject Property without any legal authority or standing to do so, and in violation of State laws when [Adelson] was not in default of her mortgage when

4

[Ocwen] began sending notices of default and calling regarding payment to the mortgage and disregarding the fact that [Adelsons] was not in arrears.

(*Id.*, PageID.1406).

### 5.    *Defendants' Motion to Dismiss the SAC*

Defendants moved to dismiss the SAC for failure to state a claim and as barred by *res judicata*. (*Id.*, ECF No. 61). On February 16, 2017, Magistrate Judge Mona K. Majzoub issued a 25-page Report and Recommendation ("R&R") recommending dismissal of Adelson's claims. (*Id.*, ECF No. 86). Magistrate Judge Majzoub reasoned that "[Adelson's] claims arise from two separate instances of allegedly wrongful conduct: (1) Defendant Ocwen's mortgage servicing activities and debt collection practices; and (2) the assignment of [Adelson's] mortgage from Defendant MERS to Defendant HSBC." (*Id.*, PageID.2841). Magistrate Judge Majzoub concluded:

- The claims in the SAC that related to Ocwen's servicing and debt collection practices were barred by *res judicata*. (*Id.*, PageID.2841-44).

- The remaining claims, relating to the Assignment, failed as a matter of law because "MERS had the authority to assign [Adelson's] mortgage to Defendant HSBC, the assignment is valid in that regard, and Defendant HSBC is a proper party to initiate foreclosure proceedings…." (*Id.*, PageID.2846).

Although Adelson objected to the R&R, the District Court was "satisfied that the reasoning and legal analysis of the [R&R] is correct," and it adopted the R&R and dismissed the SAC in March 2017. (*Id.*, ECF No. 93). Adelson filed a motion for reconsideration, which was denied on July 10, 2017. (*Id.*, ECF Nos. 95, 98).

### 6. *The Sixth Circuit Appeal*

Adelson filed a Notice of Appeal on August 8, 2017. (*Id.*, ECF No. 99). On August

20, 2018, the Sixth Circuit Court of Appeals issued an order affirming the District Court's

judgment. (*Id.*, ECF No. 106). In its opinion, the Court of Appeals ruled that:

- "[I]n the MDL Settlement, Adelson voluntarily released her claims related to the servicing and debt-collection practices of the defendants regarding her mortgage[,]" and therefore 17 of her 19 claims were barred by *res judicata*.

- The remaining claims, relating to the Assignment and the Trustee's authority to foreclose, failed because MERS was "empowered" to assign its interest in the Property, and the Assignment created a clear chain of title to the Trustee, which entitled it to foreclose the Mortgage.

(*Id.*, PageID.3507-08, 3511). Adelson filed a Petition for Rehearing, which the Sixth

Circuit denied on October 10, 2018. (*Id.*, ECF No. 107). It does not appear that Adelson

filed a petition for certiorari in the United States Supreme Court.

### 7. *The Foreclosure Now at Issue*

Following resolution of Adelson's appeal in 2018, Ocwen – via a November 7, 2018

notice sent by Defendant Trott Law, P.C. ("Trott") – advised Adelson that the Loan

remained in default and would be foreclosed unless Adelson repaid the debt.[3] (ECF No.

1-1, PageID.224). Adelson did not repay the Loan and, in January 2019, the Trustee

noticed the foreclosure sale for February 26, 2019. (*Id.*, PageID.272-73).

By her own admission, Adelson "filed bankruptcy on February 22, 2019, to stop the

sale" (ECF. No. 1-1, PageID.25), but her bankruptcy case was quickly dismissed because

---

[3] By this time, Adelson had been living on the Property for more than eleven years without making any payments on her Loan.

she failed to file the required Chapter 13 Plan and related documents (*see* U.S. Bankruptcy Court for the Eastern District of Michigan Case No. 19-42478).  The foreclosure sale was adjourned from week to week during the pendency of Adelson's bankruptcy proceedings. (ECF No. 1-1, PageID.270; ECF No. 10-2, PageID.370-387[4]).  At a May 7, 2019 Sheriff's Sale, the Trustee purchased the Property for $457,190.68.  (ECF No. 1-1, PageID.270).

### 8.   *The Instant Litigation*

On October 22, 2019 – nearly six months after the Sheriff's Sale – Adelson filed a complaint in the Oakland County Circuit Court (the "State Court") against Ocwen, the Trustee, Trott, and two Trott attorneys.  That same day, Adelson filed an *ex parte* motion seeking to extend the redemption period that was set to expire on November 7, 2019.  On October 29, 2019, the State Court denied Adelson's motion because she did not demonstrate:

> … that she is entitled to an equitable extension of the redemption period on an ex-parte basis because she has not made a clear showing of fraud or irregularity, especially considering the litigious history of the transactions and occurrences alleged in this matter.

(ECF No. 10-3, PageID.389).

---

[4] Defendants attached copies of the Notices of Adjournment to their motion to dismiss, asserting that the Court could properly consider them because they are public records or are otherwise appropriate for the taking of judicial notice.  (ECF No. 10, PageID.348) (internal quotations omitted).  In her response, Adelson argues that these notices "were never published as [she] checked daily."  (ECF No. 19, PageID.456).  She also claims that because they were "not accompanied by an affidavit from the purported author, nor authenticated by any other means[,]" they are inadmissible. (*Id.*, PageID.458).  The Court disagrees that such is required, as the Notices "are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice."  *Irwin v. Fed. Home Loan Mortg. Corp.*, No. 13-14030, 2014 WL 12573529, at *2 (E.D. Mich. Feb. 19, 2014).

On October 31, 2019, Adelson attempted to remove the State Court proceedings to this Court, where it was assigned Case No. 19-13208.  On November 8, 2019, the Court remanded the proceedings to State Court because "a plaintiff who chooses to file an action in state court cannot later remove to federal court."  (Case No. 19-13208, ECF No. 11 PageID.598).  Thus, that case was closed on November 8, 2019.

On December 4, 2019, the Trustee and PHH, as successor by merger to Ocwen, filed their Notice of Removal.  (ECF No. 1).  PHH and the Trustee then filed the instant motion to dismiss Adelson's complaint, arguing that it fails to state a claim upon which relief can be granted.[5]  (ECF No. 10).

## B.     Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[5] On May 4, 2020, Adelson filed a motion to strike Defendants' motion to dismiss, arguing that the Notices of Adjournment attached as Exhibit A to Defendants' motion are fraudulent and constitute "an attempt to … commit fraud upon the court…."  (ECF No. 32, PageID.963).  From a procedural perspective, however, Adelson's motion to strike is inappropriate.  Specifically, Adelson cannot satisfy the standard for a motion to strike under Fed. R. Civ. P. 12(f), which applies only to a "pleading" (defined in Rule 7(a) to include only complaints, counterclaims, cross-claims, third-party complaints, and answers to those documents).  Dispositive motions are not "pleadings" that can be stricken under Rule 12(f), and "[e]xhibits attached to a dispositive motion are not 'pleadings' within the meaning of Fed. R. Civ. P. 7(a) and are therefore not subject to a motion to strike under Rule 12(f)."  *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006) (district court properly denied motion to strike exhibits attached to a dispositive motion because such exhibits were not "pleadings" within the meaning of Rule 12(f)).  Thus, the Court will deny Adelson's Motion to Strike (ECF No. 32).

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading[.]" *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

9

### C.    Analysis

> 1.    *Counts 1, 3, and 6 of Adelson's Complaint Should*
> *Be Dismissed Because She Fails to State a Claim to*
> *Reverse the Foreclosure or Extend the Redemption Period*

As set forth above, Adelson concedes that she has not made a Loan payment in more

than 13 years (ECF No. 1-1, PageID.20), but she still claims that Defendants'[6] foreclosure

was wrongful.  In their motion, Defendants argue that Count 1 – which alleges breach of

contract due to wrongful foreclosure – fails because Adelson does not identify any actual

error in the foreclosure proceedings (let alone any error that would warrant reversal of a

sheriff's sale after the expiration of the redemption period).  (ECF No. 10, PageID.351).

Defendants further argue that Counts 3 and 6 – for quiet title and fraudulent conveyance,[7]

respectively – also fail because the foreclosure was proper and, therefore, Adelson is not

entitled to an order quieting title to the Property, nor did Defendants "fraudulently convey"

the Property.  (*Id.*, PageID.352).  For the reasons set forth below, the Court agrees.

---

[6] In her complaint, Adelson argues that the Trustee could not foreclose because her Loan allegedly was liquidated or charged off in 2018, following the liquidation of an HSBC Euro High Yield Bond Fund. (ECF No. 1-1, PageID.23; *see also* ECF No. 19, PageID.454 (arguing that Defendants must establish both that the Loan "was not included in [the] liquidation" and how the Trustee "continues to retain a beneficiary interest following a complete liquidation")).  This argument is without merit, however, as both this Court and the Sixth Circuit have already concluded that the Trustee was entitled, as the assignee of the Mortgage, to foreclose.  *See* Case No. 07-13142, ECF No. 86, PageID.2846 ("Defendant HSBC is a proper party to initiate foreclosure proceedings…."; ECF No. 106, PageID.3511 (the Assignment created a "clear chain of title" to the Trustee, which entitled it to foreclose the Mortgage).  Moreover, Adelson has not explained how the liquidation of an HSBC Euro High Yield Bond Fund has any relation to the foreclosure of a Mortgage assigned to a different entity – HSBC Bank USA N.A., as Trustee.  Finally, Adelson does not allege that she provided any consideration in exchange for the purported "charge off."

[7] In her response to Defendants' motion, Adelson indicates that Count 6 is for "slander of title" and was "mislabeled as fraudulent conveyance."  (ECF No. 19, PageID.473).  Under the circumstances, however, this is a distinction without a difference, as she cannot establish that Defendants' actions were improper, let alone malicious.  *See* MCL 600.2907(a).

a.      *General Legal Principles*

In *Bryan v. JP Morgan Chase Bank*, 304 Mich. App. 708 (2014), the Michigan Court of Appeals examined a plaintiff's standing to bring claims related to a property after the expiration of the redemption period.  In affirming the dismissal of the complaint, the Court of Appeals confirmed that, "by failing to redeem the property within the applicable time, plaintiff lost standing to bring her claim." *Id.* at 715.  If there is no redemption during the statutory redemption period, the sheriff's deed vests in the grantee, and the grantee is assigned all right and title of the mortgagor that existed at the time the mortgage was given. *See* MCL 600.3236.  In other words, where – as here – Adelson failed to redeem the property before the redemption period expired, her rights and title to the property were extinguished.[8]  *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942).

Moreover, if there are defects in the foreclosure procedure – including noncompliance with any statutory requirement – any such defect merely renders the sale voidable, rather than void.  *See Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98, 115 (2012).  Further, "plaintiffs must show that they were prejudiced by" the failure to comply

---

[8] As set forth above, at the same time she filed her State Court complaint, Adelson also filed an *ex parte* motion seeking to extend the redemption period that was set to expire on November 7, 2019. On October 29, 2019, the State Court denied Adelson's motion.  (ECF No. 10-3, PageID.389).  On May 30, 2020, Adelson filed a motion in this Court "for correction of docket," or "in the alternative" to consolidate this case with E.D. Mich. Case 19-13208.  (ECF No. 37).  But, when Defendants removed the instant case to federal court, Adelson did not re-file her *ex parte* motion for extension of the redemption period (which makes sense, given that it had already been denied). For this reason, there is nothing to "correct," as Defendants filed with this Court copies of all documents that had been served upon them.  Moreover, consolidation of this case with Case No. 19-13208 is inappropriate, as that case has been closed.  Thus, the Court will deny Adelson's "Motion to Correct Docket" (ECF No. 37).

with the statute, and to "demonstrate such prejudice, they must show they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 115-16; *see also Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 360 (6th Cir. 2013) (borrowers cannot state a claim unless they assert facts that would "make a clear showing of fraud or irregularity to maintain this action"). Finally, under Michigan law, the redemption period may not be extended unless there is a clear showing of fraud or irregularity that relates to the foreclosure procedure itself. *See Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 583-84 (E.D. Mich. 2014); *see also El-Seblani v. IndyMac Mortgage Servs.*, 510 F. App'x 425, 428 (6th Cir. 2013).

### b. The Foreclosure Was Not Time-Barred

In her complaint, Adelson argues that the Trustee was barred from foreclosing on the Mortgage because the limitations period for foreclosure is 10 years. (ECF No. 1-1, PageID.29-32) (arguing that the statute of limitations began to run in June 2007, when Ocwen accelerated the Loan, and expired in June 2017). In advancing this argument, Adelson relies on MCL 600.5807(5), which provides a 10-year limitations period for a breach of contract action "founded on a covenant in a deed or mortgage of real estate." The problem for Adelson, however, is that neither Ocwen nor the Trustee sued her for damages following her breach of the Mortgage and, therefore, the 10-year statute of limitations in Section 5807(5) does not apply. *See, e.g., Ross v. MERS/MERSCORP Holdings, Inc.*, No. 12-15205, 2013 WL 1821280, at *3 (E.D. Mich. Apr. 30, 2013) ("Cases that have addressed the 10 year statute of limitations in M.C.L. § 600.5807[(5)] involved

actions seeking payments under a mortgage [as opposed to foreclosure of the mortgage].").

Rather, the applicable statute of limitations here is found in MCL 600.5803 ("Foreclosure of mortgages"), which provides a 15-year statute of limitations on actions to foreclose mortgages. Section 5803 notes that the limitations period begins to run when the mortgage becomes due or when the last payment was made on the mortgage. *Id.* In light of Adelson's admission that she made her last payment in April 2007 (ECF No. 1-1, PageID.20), the limitations period would not expire until April 2022. *See* MCL 600.5803. Thus, where the Trustee completed its foreclosure in May 2019, it did so within the applicable limitations period, and Adelson has identified no fraud or irregularity in the foreclosure proceedings.

c. *Adelson's Notice-Related Arguments are Without Merit*

Adelson admits that, following resolution of the prior litigation, she received a November 7, 2018 letter from Trott advising her that the Loan remained in default and would be foreclosed unless she repaid the debt.[9] (ECF No. 1-1, PageID.224). When the

---

[9] Adelson argues for the first time in her response to Defendants' motion to dismiss that, under Fed. R. Civ. P. 13(a), the Trustee was required – in 2007 – to file a compulsory counterclaim for judicial foreclosure because such a claim was "logically related" to Adelson's wrongful foreclosure claim. (ECF No. 19, PageID.470-72). But, Adelson is incorrect: MCL 600.3201 specifically provides that mortgages containing powers of sale, like the Mortgage here, "may be foreclosed by advertisement[.]" Adelson does not cite a single authority in support of her argument that, back in 2007, the Trustee was required to forego its contractual and statutory right to foreclose by advertisement and proceed, instead, by way of judicial foreclosure. And, federal courts considering statutory schemes similar to that in Michigan – where a creditor has a contractual or statutory right to nonjudicial foreclosure – have rejected the exact argument Adelson advances here. *See, e.g., Douglas v. NCNB Texas Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992) ("The federal counterclaim rule, Fed. R. Civ. P. 13(a), is inapplicable if it abridges, enlarges, or modifies the plaintiff's or defendant's substantive rights. Under Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default, and debtors have no right to force the lender to pursue a judicial foreclosure remedy. Application of rule 13(a) in the instant

Trustee noticed the foreclosure sale for February 26, 2019, Adelson "filed bankruptcy on February 22, 2019, to stop the sale." (*Id.*, PageID.25). According to Adelson, Defendants were required to "restart a new notice of foreclosure publishing in the county newspaper or serve the mandatory notice of foreclosure with its intended May 7, 2019 sale date to Adelson." (*Id.*, PageID.36-37). But, the statute Adelson cites – MCL 600.3220 – does not require such "new notice."

In their motion, Defendants point out that MCL 600.3220 governs foreclosure sale adjournments and provides as follows:

> Such sale may be adjourned from time to time, by the sheriff or other officer or person appointed to make such sale at the request of the party in whose name the notice of sale is published by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made, and if any adjournment be for more than 1 week at one time, the notice thereof, appended to the original notice of sale, shall also be published in the newspaper in which the original notice was published….

Here, the Trustee complied with the foreclosure by advertisement process by posting and publishing notices of foreclosure and then adjourning the Sheriff's Sale week to week from February 26, 2019, to May 7, 2019.[10] (ECF No. 1-1, PageID.258; ECF No. 10-2,

---

case would abridge the lender's substantive rights and enlarge the debtor's substantive rights. Thus, we believe it is appropriate in this case to follow the state's practice of permitting a lender to refrain from filing a counterclaim on overdue notes and to wait to pursue either a judicial or nonjudicial foreclosure remedy.").

[10] In her response brief, Adelson also challenges the authenticity of the Notices of Adjournment, alleging that Thomas Rabette, the Oakland County Deputy Sheriff who signed the Notices, owns property in Florida and, therefore, could not have actually signed them. (ECF No. 19, PageID.458-59). But, the Sheriff's Deed and related affidavits (ECF No. 1-1, PageID.258; ECF No. 10-2, PageID.370-87) constitute presumptive evidence of the facts contained therein and establish compliance with the statutory requirement. *See* MCL 600.3264. Adelson's wholly unsupported arguments to the contrary are without merit.

PageID.370-87).  "Under the law, a party who publishes an initial notice of adjournment may continue to adjourn a foreclosure sale from week to week without having to republish a notice of the adjournment every week."  *Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 510-11 (E.D. Mich. 2004).  Thus, contrary to Adelson's argument, the Trustee was not required to republish or serve additional foreclosure notices, and this purported notice issue does not constitute fraud or irregularity in the foreclosure proceedings.

Adelson also appears to argue that Defendants violated the automatic bankruptcy stay when they published notices adjourning the foreclosure sale on a week-to-week basis. (ECF No. 19, PageID.460).  In essence, then, Adelson is arguing that these adjournments were actually attempts to collect a debt (in violation of the bankruptcy stay), as opposed to efforts by Defendants to respect the stay (by postponing the foreclosure sale).  But, Adelson cites no case law in support of this counterintuitive proposition; indeed, the case she cites, *In re Global Technovations, Inc.*, 694 F.3d 705, 711 (6th Cir. 2012), simply stands for the unremarkable position that, once a bankruptcy petition is filed, "the debtor's property cannot be repossessed or foreclosed on, and liens cannot be perfected or enforced against the debtor's property."  Other courts have recognized, however, that causing a "scheduled sale to be postponed until such time as the automatic stay is modified or terminated by the bankruptcy court or by operation of law" is entirely appropriate.  *In re Webb*, No. BAP 11-8016, 2012 WL 2329051, at *14 (6th Cir. Apr. 9, 2012).  Again, then, Adelson fails to identify any fraud or irregularity in the foreclosure proceedings.

> **d.** *Adelson Did Not Follow the Statutory*
> *Requirements to Lengthen the Redemption Period*

Adelson also claims that the Sheriff's Deed "falsely" states that the redemption period was six months, even though Defendants allegedly "had full and complete knowledge" that she uses the Property as a "self-funded animal rescue that provides shelter to horses, dogs, cats and chicken[s] which would render the redemption period to be 1-year." (ECF No. 1, ¶ 127). It is true that, if a property is used for "agricultural purposes," the redemption period is one year from the date of the sale. *See* MCL 600.3240(11). But, in order to establish that the Property was indeed used for such agricultural purposes, and thus subject to an extended redemption period, Adelson was required to follow certain statutory requirements (which she did not do). Specifically, MCL 600.3240(16) provides as follows:

> [T]here is a presumption that the property is used for agricultural purposes if, before the foreclosure sale under this chapter, the mortgagor provides the party foreclosing the mortgage and the foreclosing party's attorney proof that the mortgagor filed a schedule F to the mortgagor's federal income tax form 1040 for the year preceding the year in which the proceedings to foreclose the mortgage were commenced and records an affidavit with the register of deeds for the county in which the property is located stating that the proof has been delivered. **If the mortgagor fails to provide proof and record an affidavit as required by this subsection before the foreclosure sale, there is a presumption that the property is not used for agricultural purposes.** . . .

*Id.* (emphasis added).

Here, Adelson does not even allege that she complied with the statutory requirements for categorizing the Property as one used for agricultural purposes. Such a failure creates the presumption that the Property was *not* used for agricultural purposes.

16

*See Hebeler v. Wells Fargo Bank, N.A.*, 380 F. Supp. 3d 684, 690 (W.D. Mich. 2019) ("As required by the statute, a presumption arises that the foreclosed property was not used for agricultural purposes and Hebeler must produce evidence to rebut the presumption."). In *Hebeler*, the court considered three factors in determining whether the plaintiff had rebutted the presumption that the property at issue was not used for agricultural purposes. First, as is the case here, the plaintiff in *Hebeler* used the property for residential purposes. Second, the record in both cases "contains no evidence that agricultural use was a consideration by either party when the mortgage was issued." *Id.* And, finally, the *Hebeler* court noted that the "value of Hebeler's economic enterprise [was] de minimis when compared to the value of the mortgaged property." *Id.* The same is true here: although the Loan was for $178,500, there is no indication that Adelson made any profit from her "self-funded animal rescue that provides shelter to horses, dogs, cats and chicken[s] ...." (ECF No. 1-1, PageID.39). Thus, the six-month redemption period, which expired without her redeeming the Property, was the appropriate redemption period, and Adelson's argument to the contrary fails to establish fraud or irregularity in the foreclosure proceedings.

### e.    *Adelson's Bond-Related Arguments are Without Merit*

Adelson also claims that the Sheriff's Sale itself was improper because the Deputy Sheriff who conducted the sale, Roger St. Jean, allegedly did not have "authority to act as an auctioneer" because "[t]o date the $2,500.00 bond has not been posted by Roger A. St. Jean … in violation of MCL 51.70 and MCL 51.74." (ECF No. 1-1, PageID.41). This argument, too, is meritless.

MCL 51.70 provides that Sheriff's deputies must "execute and file with the county

clerk an official bond running to the people of this state in the amount of at least $2,500.00,

**if the county board of commissioners determines an individual bond is necessary** ….”

(emphasis added).[11]  Here, Adelson has not established – or even alleged – that the Oakland

County Board of Commissioners determined that Deputy Sheriff St. John was required to

file an individual bond.  Again, then, Adelson has failed to establish fraud or irregularity

in the foreclosure proceedings.[12]

> f.    *Adelson Has Not Alleged Actual Prejudice Resulting from
> Any Purported Defect in the Foreclosure Proceedings*

Defendants also argue that “[e]ven if the Trustee had not properly adjourned the sale

from week to week (it did), if the redemption period was supposed to be one year (it was

not), or if the Deputy Sheriff had been required to post a bond (he was not), such purported

defects do not constitute ‘fraud or irregularity’ in the foreclosure process sufficient to set

aside the foreclosure sale.”  (ECF No. 10, PageID.360).  The Court agrees.  As Defendants

point out, numerous courts have rejected attempts to claim notice defects as a basis to undo

a foreclosure because such defects, even if true, do not constitute sufficient fraud or

irregularity in the foreclosure process to set aside the foreclosure sale.  Defendants cite

---

[11] If an individual bond is required under MCL 51.70, “each deputy sheriff before the expiration of an individual bond … shall renew the security required to be given before entering upon the duties of office.”  MCL 51.74.

[12] Moreover, Adelson does not explain how any purported failure by the Deputy Sheriff to have filed an individual bond when he was appointed (in 2006) relates to the foreclosure procedure itself or could possibly have prejudiced Adelson in any way.  As explained in greater detail below, *infra* at 18-20, to prevail on wrongful foreclosure claims, borrowers must show that they were prejudiced by any failure to comply with the foreclosure statute, and “to demonstrate such prejudice, they must show they would have been in a better position to preserve their interest in the property absent defendant’s noncompliance with the statute.”  *Kim*, 493 Mich. at 116.  Here, Adelson has failed to allege or show any cognizable prejudice.

*Nafso v. Wells Fargo Bank, NA*, No. 11-10478, 2011 WL 1575372 (E.D. Mich. April 26,

2011), arguing that, in that case:

> the plaintiff alleged that foreclosure notices had not been properly
> posted.  The court noted that, "[i]mplicit in this argument is the notion
> that these alleged defect[s] are sufficient irregularities to void the
> foreclosure," but plaintiff is "mistaken."  *Id.*  Further, like here,
> "Plaintiff was required to raise the arguments when foreclosure
> proceedings began," but "Plaintiff made no attempt to stay or
> otherwise challenge the foreclosure" and, thus, plaintiff "cannot show
> prejudice resulting from either alleged defect where he did not attempt
> to redeem the property and waited until the day before the redemption
> period expired to challenge the sheriff's sale, and at no time requested
> a stay of the sale."

(ECF No. 10, PageID.360) (quoting *Nafso*, 2011 WL 1575372, at *3).

Moreover, even if there were defects in the foreclosure procedure – including

noncompliance with any statutory requirement – such defect is insufficient to set aside a

foreclosure sale under Michigan law.  Rather, "plaintiffs must show that they were

prejudiced by" the failure to comply with the statute, and "[t]o demonstrate such prejudice,

they must show that they would have been in a better position to preserve their interest in

the property absent defendant's noncompliance with the statute." *Kim*, 493 Mich. at 115-

16.  Here, Adelson does not allege any prejudice based on adjournment of the foreclosure.

Indeed, she admits that she filed for bankruptcy solely to "stop the sale," and Defendants,

in turn, adjourned the sale during the pendency of her bankruptcy proceedings.  Far from

prejudicing Adelson, adjourning the Sheriff's Sale simply afforded her more time in the

Property.

Similarly, Adelson admits that she learned of the Sheriff's Sale no later than June

15, 2019 – more than four months before she filed her complaint challenging the

foreclosure.  (ECF No. 1-1, PageID.25).  She provides no explanation for this delay, simply alleging in conclusory fashion that she was prejudiced by the foreclosure through "loss of title to her family's home."  (*Id.*, PageID.45).  But, loss of title following a proper sheriff's sale is not, by itself, actionable prejudice under *Kim* and *Conlin*, as a borrower needs to show more than that to set aside a foreclosure.

In summary, Adelson has not alleged actual fraud or irregularity in the foreclosure process, nor has she alleged prejudice as a result of any purported defect.  Adelson did not allege that she was misled into believing that no sheriff's sale had occurred (only that the date had changed), and she failed to act timely after learning that the sale had been completed.  As such, her wrongful foreclosure, quiet title, and fraudulent conveyance claims (Counts 1, 3, and 6, respectively) should be dismissed.[13]

> ### 2.   *Adelson's Fair Debt Collection Practices Act Claim Fails*

In Count 4 of her Complaint, Adelson alleges that Defendants[14] violated the Fair

---

[13] In her response brief, Adelson argues – for the first time – that she is entitled to a payment of nearly $300,000 *from* the Trustee.  (ECF No. 19, PageID.463-65).  In support of this argument, Adelson reasons that because she borrowed $178,500 in 2006, that amount represents the full debt owed prior to the Sheriff's Sale in 2019, even after 13 years of nonpayment.  (*Id.*, PageID.462).  She then concludes that the Trustee's bid of $457,190.68 at the Sheriff's Sale constitutes an "overbid," and that she is entitled to the difference of more than $275,000.  (*Id.*, PageID.464).  Defendants characterize this argument as "bold but completely illogical" (ECF No. 24, PageID.524), and the Court agrees, as it ignores the fact that for the 13 years Adelson failed to make Loan payments, and the Loan balance grew as a result of the unpaid interest, escrow advances (for taxes and insurance), and other charges that accrued during that lengthy period of time.  There is simply no indication that there are "surplus funds" to which anyone – let alone Adelson – is entitled.

[14] Although Adelson pleads her FDCPA clam against "All Defendants," she does not plead that the Trustee is a debt collector or that it took any action that violated the FDCPA.  Thus, the Court will consider Adelson's FDCPA allegations as against Ocwen.

Debt Collection Practices Act ("FDCPA") in foreclosing the mortgage.  (ECF No. 1-1, PageID.53-60).  For the reasons set forth below, such a claim fails.

To begin with, a plaintiff bears the burden of establishing that a defendant is a debt collector under the FDCPA.  *See Golliday v. Chase Home Finance, LLC*, 761 F. Supp. 2d 629, 635 (W.D. Mich. 2011).  And, the Sixth Circuit has confirmed that a mortgage servicer is not a "debt collector" under the FDCPA unless it "acquired a debt in default or has treated the debt as if it were in default at the time of the acquisition."  *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012).

As an initial matter, although Adelson asserts that Ocwen was a debt collector because certain unidentified "records" purportedly "indicate the loan was in default at the time it assumed servicing of the Loan" (ECF No. 1-1, PageID.54), she is incorrect.  Indeed, earlier in the complaint, Adelson acknowledges that the Loan was *not* in default when Ocwen began servicing it in December 2006.  Rather, Adelson admits that she did not stop making Loan payments until April 2007. (*Id.*, PageID.20).  And, Ocwen's Notice of Default, which Adelson attached to the complaint, is from April 2007 – months *after* Ocwen started servicing the loan.  (ECF No. 1-1, Page ID.106).  Given these facts, which come straight from Adelson's own complaint, the Court need not accept as true legal conclusions and unwarranted factual inferences she now makes in responding to Defendant's motion to dismiss, and it is not bound by allegations that are clearly unsupported and unsupportable.  *See, e.g., Dumont v. Lyon*, 341 F. Supp. 3d 706, 718-19 (E.D. Mich. 2018).  Accordingly, Adelson's FDCPA claim against Ocwen should be

dismissed.[15]

### 3. *Adelson's Intentional Infliction of Emotional Distress Claim Should be Dismissed*

As Defendants point out, "[t]he general rule in Michigan is that claims for intentional infliction of emotional distress are not cognizable where, as here, the relationship at issue is contractual." (ECF No. 10, PageID.364) (citing *Hajciar v. Crawford and Co.*, 142 Mich. App. 632, 636-37 (1985)). Here, Adelson's complaint is based entirely on the Trustee's purported breach of the mortgage contract. Moreover, other Eastern District of Michigan cases have held that actions associated with mortgage foreclosure do not give rise to a claim for intentional infliction of emotional distress. *See, e.g., Roche v. CitiMortgage, Inc.*, No. 14-11424, 2016 WL 5661580, at *9 (E.D. Mich. Sept. 30, 2016). Thus, Adelson's intentional infliction of emotional distress claim (Count 5) should be dismissed.

### 4. *Adelson's Conspiracy Claim Should be Dismissed*

In Count 2 of her complaint, Adelson alleges that Defendants conspired "to foreclose a mortgage loan that no longer existed[.]" (ECF No. 1-1, PageID.49). Conspiracy, by itself, is not a cause of action; "rather, it is necessary to prove a separate, actionable tort." *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 632 (1986). Thus, when a plaintiff "fail[s] to state any actionable tort theories in [her]

---

[15] To the extent Adelson's FDCPA claim against Ocwen is that foreclosure was barred by the expiration of the statute of limitations (*i.e.*, an allegation that Ocwen tried to "pressure Adelson to pay a time-barred mortgage loan that no longer exists and she no longer owes") (ECF No. 1-1, PageID.55), such a claim fails as a matter of law for the reasons explained *supra* at 12-13.

complaint, the conspiracy theory must also fail." *Id.*  It is not enough for Adelson to vaguely allude to Defendants' "web of lies and false documents" as proof of an alleged conspiracy.  (ECF No. 19, PageID.473).  Because Adelson does not state any viable claims against Defendants, her claim for civil conspiracy (Count 2) should be dismissed.

### 5.   *Interpleader is Not Required*

Finally, in Count 7 of her complaint, Adelson claims that she is "unaware of the identity of the holder(s) in due course of the Mortgage and Note" and demands that Defendants identify said holders "so that they may be brought into this action through interpleader …."  (ECF No. 1-1, PageID.64).  But, such a procedure is improper, as:

> Interpleader is a form of joinder for use by a person who does not know to which or more than one claimant the person is liable…. It enables the person or entity in possession of a tangible res or fund of money (the "stakeholder") to join in a single suit two or more "claimants" asserting mutually exclusive claims to that stake.  The stakeholder institutes interpleader, usually as an initial proceeding, by filing a complaint and joining the claimants.

2 Moore's Fed. Prac. and Proc. § 14.70 (2019).  Interpleader is not appropriate here, where the parties in interest are known and there are not multiple "holder(s) in due course of the Mortgage and Note."  (ECF No. 1-1, PageID.64).  Rather, as established by the record before this Court, Ocwen serviced the Loan, and the Trustee was the mortgagee of record prior to the foreclosure.  Because there are no additional interested parties, Adelson's interpleader claim (Count 7) should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 10)** be **GRANTED**.  **IT IS ORDERED** that Adelson's Motion to Strike

**(ECF No. 32)** and "Motion to Correct Docket" **(ECF No. 37)** are **DENIED.**

Dated: August 20, 2020                       s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections that raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 20, 2020.

s/Eddrey O. Butts____
EDDREY O. BUTTS
Case Manager
